UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA ANN CHARLES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>　　　　Respondent. | No. 1:17-cv-00955-GSA<br><br>**ORDER DIRECTING ENTRY OF<br>JUDGMENT IN FAVOR OF THE<br>COMMISSIONER OF SOCIAL SECURITY<br>AND AGAINST PLAINTIFF** |

## I. <u>Introduction</u>

Plaintiff Gloria Ann Charles seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 18, 21 and 22**.** Having reviewed the record as a whole, the Court finds that the ALJ's decision is based an appropriate legal standards and supported by substantial evidence. Accordingly, the Court affirms the Commissioner's denial of benefits to Plaintiff.

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 9 and 10.

1

## II. Procedural Background

On October 21, 2013, Plaintiff protectively filed an application for disability insurance benefits, alleging disability beginning August 31, 2008. AR 30. The Commissioner denied the application initially on January 16, 2014, and upon reconsideration on May 14, 2014. AR 30. On June 9, 2014, Plaintiff filed a timely request for a hearing. AR 30.

Administrative Law Judge Cynthia Floyd presided over an administrative hearing on February 24, 2016. AR 46-80. Plaintiff, proceeding *pro se*, appeared and testified. AR 46. An impartial vocational expert, Jose Chaparro, also appeared and testified. AR 46.

On March 23, 2016, the ALJ denied Plaintiff's applications. AR 30-39. The Appeals Council denied review on May 12, 2017. AR 1-3. On July 17, 2017, Plaintiff filed a timely complaint seeking this Court's review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Doc. 1.

## III. Factual Background

Plaintiff (born May 21, 1954) left school in tenth grade. AR 53. She has not worked since August 2007 when she was laid off from her job as an administrative sales assistant for a new home builder. AR 54, 59-60. Her disability insurance coverage ended June 23, 2012. AR 85.

Plaintiff testified that she had diabetes controlled by medication, hypertension controlled by medication, and arthritis in her hands. AR 61-62. The arthritis flared up about once each month and lasted for three or four days; Plaintiff took Advil for pain relief. AR 62. During flare-ups, she avoided using her fingers but remained able to do simple things such as scramble an egg or make a cup of coffee, but not to use the computer. AR 63. After treatment for colon cancer discovered in November 2013, Plaintiff was anemic and fatigued. AR 63, 65.

Because her husband did not drive, Plaintiff did all the driving for the couple, going to medical appointments, stores, and their children's nearby homes. AR 53. She prepared meals, cleaned house, did laundry and washed dishes. AR 64-67. Typically, she napped after lunch. AR 67. In a disability report completed in 2014, Plaintiff reported that she remained able to care for

///

herself. AR 202. After developing sciatica in the four months prior to the administrative hearing, Plaintiff had stopped exercising and going for walks. AR 67-69.

In her initial claim for disability, Plaintiff alleged the following illnesses, impairments, and conditions: diabetes, high blood pressure, high cholesterol, osteoporosis, osteoarthritis in finger joints, anemia, and thyroid. AR 82. On January 16, 2014, agency physician David L. Hicks, M.D., who evaluated the initial application, opined that there was insufficient evidence to support a disability finding. AR 87. On reconsideration, agency physician J.R. Saphir, M.D., again found insufficient evidence to support a finding of disability. AR 96.

The record included 538 pages of medical records from Kaiser-Permanente from September 2007 through January 2012. AR 239-776. These records document Plaintiff's ongoing treatment for obesity, diabetes, hypertension, and hyperlipidemia, as well as various acute conditions.

Beginning in April 2010, Plaintiff complained of problems with both feet, consisting of a bony growth on her right heel and pain between the second and third toes on her left foot. AR 360-61. X-rays of her right foot indicated a mild hallux valgus deformity and mild degenerative arthritis. AR 364. Left foot x-rays also indicated mild osteoarthritis. AR 364. During a consultation on April 21, 2010, podiatrist Charles Arthur Oliver, D.P.M., injected Plaintiff's left foot with anesthetic and recommended that Plaintiff first try conservative treatment (ice and a shoe pad) on the right heel (calcaneal exostosis). AR 374.

After conservative treatment did not relieve Plaintiff's heel pain, Dr. Oliver performed surgery to excise the growth on August 13, 2010. *See* AR 454 ff. By September 9, 2010, Dr. Oliver observed that the incision was well-healed with minimal residual fullness and there was no pain with direct palpation. AR 528.

On June 27, 2011, Plaintiff returned to Dr. Oliver complaining of left heel pain. AR 566. The doctor diagnosed retrocalcaneal bursitis with achilles enthesopathy, and applied a cast to Plaintiff's left foot. AR 566. X-rays revealed degenerative arthritic changes of the foot. AR 569. No further treatment of the left foot is documented in the administrative record.

In early July 2011, Plaintiff developed a skin ulcer beneath a fold of abdominal flesh (pannus). AR 572. On July 22, 2011, Bryan Scott Stewart, M.A., diagnosed cellulitis. AR 574. On August 6, 2011, Adolfo Alvarez, M.D., noted that the wound was healing slowly but that there were chronic skin changes. AR 590. On September 15, 2011, Dr. Alvarez performed a panniculectomy. AR 618. On October 3, 2011, Dr. Alvarez treated a post-surgical wound infection. AR 704. By October 10, Plaintiff was feeling better. AR 740.

On December 14, 2011, Plaintiff reported that she had been experiencing sharp pain on the right side of her abdominal scar for about two months. AR 762. Chungxi Li, M.D., attributed the lingering pain to the post-surgical infection and prescribed ibuprofen and topical medications to relieve the painful scar. AR 763.

Beginning in January 2013, Plaintiff changed her medical provider. *See* AR 777 ff. In the course of a routine colonoscopy on November 13, 2013, doctors discovered a cancerous mass in Plaintiff's right colon. AR 796. Surgeon Saber Ghiassi, M.D., performed a laparoscopic right hemicolectomy the same day. AR 801.

X-rays of Plaintiff's fingers taken February 1, 2016, revealed mild degenerative changes to the joints. AR 856-58.

### IV. **Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v.*

*Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### V. **The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 416.927; 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P,

Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. §§ 416.920(a)-(f).

### VI. Summary of the Hearing Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 30-39. The ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2012. AR 32. Plaintiff's severe impairments included obesity, osteoarthritis and degenerative joint disease of both hands. AR 32. The severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d); 416.925; and 416.926). AR 33. The ALJ concluded that Plaintiff had the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, and sit, stand or walk six hours in an eight-hour workday but could only frequently handle, finger, feel, and grasp with the hands bilaterally. AR 33. Plaintiff was capable of perform her past relevant work as administrative clerk, purchasing agent or receptionist. AR 38. Accordingly, the ALJ found that Plaintiff was not disabled. AR 39.

### VII. Failing to Characterize Plaintiff's Ankle and Heel Problems as Severe Impairments Was Not Error

Plaintiff contends that the ALJ erred in failing to categorize her left ankle and heel problems as severe impairments at step two. Defendant contends that even if the ALJ erred in failing to determine that the left heel and ankle problems were severe impairments, any error was harmless. The Court agrees with Defendant.

At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); 20 C.F.R. §416.920(a)(4)(ii). An impairment is a medically determinable physical or mental impairment or combination of physical or mental impairments. 20 C.F.R. § 416.902(f). If a claimant does not have an impairment of combination of impairments which significantly limit

6

the claimant's physical or mental ability to do basic work activities, the Commissioner will find that the claimant does not have a severe impairment. 20 C.F.R. § 416.920(c).

"The step-two inquiry is a de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Id.* at 1290; SSR 85-28. "[T]he severity regulation is to do no 'more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working.'" SSR 85-28 (quoting *Baeder v. Heckler*, No. 84-5663 (3d Cir. July 24, 1985)).

Even if an individual impairment is not sufficiently serious to prevent a person from working, an ALJ must consider the combined effect of all of the claimant's impairments on his or her ability to function as well as considering the claimant's subjective symptoms, such as pain or fatigue. *Smolen*, 80 F.3d at 1290. "If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process." SSR 85-28. The ruling warned:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's abilities to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued. In such a circumstance, it the impairment does not meet or equal the severity level of the relevant medical listing, sequential evaluation requires that the adjudicator evaluate the individual's ability to do past work, or to do other work based on the consideration of age, education, and prior work experience.

SSR 85-28.

For example, Ms. Smolen suffered from childhood cancer that resulted in the loss of one kidney, loss of part of her left lung, changes in her remaining lung tissue, mild anemia, suppression of bone marrow production, and spinal scoliosis, all of which led to severe fatigue and back pain. *Smolen*, 80 F.3d at 1290. The ALJ found only a single severe impairment, "slight scoliosis," which limited her ability to walk and sit. *Id.* The step two analysis disregarded Ms.

7

Smolen's subjective symptoms when determining severity. *Id.* The Ninth Circuit rejected the step two analysis: "Having found Smolen to suffer from only one "severe" impairment at step two, the ALJ necessarily failed to consider at step five how the combination of her other impairments—and resulting incapacitating fatigue—affected her residual functional capacity to do work." *Id.* at 1291.

Plaintiff's situation is distinguishable. Miss Smolen contended that her multiple impairments together produced incapacitating fatigue. *Id.* at 1280-81. In contrast, Plaintiff contended only that her serious impairments included diabetes, high blood pressure, high cholesterol, osteoporosis, osteoarthritis in finger joints, anemia, and thyroid. AR 82. She did not allege that her left foot pain constituted a severe impairment, nor did the limited evidence of her left foot pain suggest that it constituted a severe impairment alone or in combination with Plaintiff's other impairments.

As set forth in the factual background above, following her recovery from surgery on her right foot, Plaintiff complained to Dr. Oliver of left heel pain on one instance. AR 566. Although X-rays revealed degenerative arthritic changes in Plaintiff's left toes, radiologist J. Elliott, M.D., reported that the calcaneous (heel) was "grossly unremarkable." AR 568. The doctor diagnosed retrocalcaneal bursitis with achilles enthesopathy, and applied a boot cast to Plaintiff's left foot. AR 566. The record includes no evidence of any further treatment to Plaintiff's left foot, ankle or heel, and includes no evidence that Plaintiff's ankle or heel pain had any effect on her ability to work.

Importantly, the policy guiding the *Smolen* determination does not apply here. After finding that Smolen had only one "severe" impairment at step two, "the ALJ necessarily failed to consider at step five how the combination of her other impairments—and resulting incapacitating fatigue—affected her residual functional capacity to do work." *Smolen*, 80 F.3d at 1291. Despite the lack of evidence in this case, the ALJ nonetheless considered the effect of the mild degenerative arthritis of Plaintiff's feet in the residual functional capacity analysis. AR 36. Nothing more was required.

### VII. The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Pain Testimony

Plaintiff contends that the ALJ erred in failing to provide clear and convincing reasons for rejecting Plaintiff's pain testimony. The Commissioner responds that based on a record that would not support findings of disabling pain, the ALJ properly discounted Plaintiff's testimony of disabling pain and other symptoms. The Court finds that the ALJ appropriately considered Plaintiff's credibility in the context of the record as a whole.

An ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Determining the extent to which a claimant is credible is the province of the ALJ, who must consider the record as a whole in reaching his or her conclusion. *See Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 693(9th Cir. 2009); SSR 16-3p. The ALJ's findings of fact must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281-1282. In this case, the first step is satisfied by the ALJ's finding that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 21. The ALJ did not find Plaintiff to be malingering.

If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Garrison*, 759 F.3d at 1014-15;

*Smolen*, 80 F.3d at 1281. "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. It is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346. "[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell*, 947 F.2d at 346.

The ALJ began her analysis by finding that Plaintiff had not left work because she was unable to perform her work, but rather because her employer eliminated her position for economic reasons. AR 34. She acknowledged that objective medical evidence in the record confirmed Plaintiff's allegations of obesity, osteoarthritis, and degenerative joint disease in both hands. AR 35. She emphasized, however, that "the extent to which these impairments limit the claimant's exertional and nonexertional functions is generally found in the opinion evidence." AR 35.

Other than Plaintiff's own accounts of her pain, the only opinion evidence of record came from the agency's medical consultants, both of whom found no evidence of a disabling impairment. AR 35. In other words, no treating or examining physician offered an opinion regarding whether any of Plaintiff's impairments affected her functional ability to perform work.

First, agency physician David Hicks, M.D., found no evidence of a disabling impairment before Plaintiff's last insured date (June 30, 2012). AR 35. He found that although the record

documented treatment including medication management, pain complaints, various medical procedures and medical conditions, Plaintiff was generally doing well. AR 36. She was managing her diabetes and generally feeling well. AR 36. She experienced pain in her right foot but recovered within a reasonable time after surgery done to remove the bony growth on her right heel. AR 36.

On reconsideration, agency physician J.R. Saphir, M.D., affirmed Dr. Hicks's opinion. AR 36. He distinguished impairments arising after the dates on which Plaintiff was last insured. AR 36. He found that Plaintiff had diabetes (type 2) and hypertension without end organ damage; both were generally well controlled with medication. AR 36. Although Plaintiff had experienced surgery to remove the bony growth in her right foot, and to minimize an abdominal skin flap that was causing ulcerative sores, she recovered fully after treatment. AR 36. No detailed medical evidence supported Plaintiff's allegations of disabling conditions. AR 36.

The ALJ acknowledged that neither of the agency physicians had an opportunity to consider Plaintiff's subjective complaints of pain and obesity. AR 36. In light of Plaintiff's testimony, the ALJ found that Plaintiff's obesity and the osteoarthritis and degenerative joint disease in her hands caused significant physical limitations, including lifting, carrying, handling, fingering and grasping. AR 36. Accordingly, she rejected the agency physicians' opinion that Plaintiff had no exertional limitations and concluded that Plaintiff was capable of medium exertion with manipulative limitations and limitations on carrying and lifting. AR 36. Because Plaintiff's testimony revealed that she led an active life, the ALJ concluded that Plaintiff's obesity did not result in further limitations. AR 36.

Because objective medical evidence did not lead to a determination that was fully favorable to Plaintiff, the ALJ then proceeded to consider Plaintiff's subjective testimony. AR

11

37. As the Ninth Circuit recently acknowledged, SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (Posner, J.). Because a "claimant's subjective statements may tell of greater limitations than can medical evidence alone," an "ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (2001) (quoting *Fair*, 885 F.2d at 602 (9th Cir. 1989). *See also Bunnell*, 947 F.2d at 34 (holding that when there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence). "Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Id.* at 345 (internal quotation marks and citations omitted).

Nonetheless, the law does not require an ALJ simply to ignore inconsistencies between objective medical evidence and a claimant's testimony. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). An ALJ properly considers whether the medical evidence supports or is consistent with a claimant's pain testimony. *Id.*; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4)

(symptoms are determined to diminish residual functional capacity only to the extent that the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence"). Nonetheless, a claimant's statement of pain or other symptoms is not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p, 2017 WL 5180304 (Oct. 25, 2017). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

An ALJ may reject symptom testimony that is contradicted by or inconsistent with the record and, as long as other reasons are provided, lacking the support of objective medical evidence. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)(holding that the ALJ did not err in rejecting Carmickle's testimony that he could lift ten pounds occasionally in favor of a physician's opinion that Carmickle could lift ten pounds frequently); *Rollins*, 261 F.3d at 857; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Citing 20 C.F.R. §§ 404.1529(c) and 416.929(c), the ALJ in this case listed as factors relevant to a credibility determination: (1) objective medical evidence; (2) the claimant's daily activities; (3) factors that precipitate and aggravate the symptoms; (4) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (5) the type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms; (6) treatment other than medication received for the pain or other symptoms; (7) other measures needed to relieve pain or other symptoms; and (8) any other factors concerning functional limitations or restrictions resulting from pain or other symptoms. AR 37. The ALJ concluded that Plaintiff's daily

///

13

activities were not as limited as her allegations of severe pain and limitation precluding all work activity:

> The claimant testified she wakes at about 7:30 or 8:00 am, but reported trouble sleeping at night. She falls asleep around 5 or 6 pm. Her husband makes coffee; she eats a banana, makes toast, takes medications, and waits a couple of hours to test her blood sugar. If she has a doctor appointment, she gets ready for that or maybe makes the bed. She may do some laundry, then prepare lunch with her husband or will do it herself and then eats lunch. After lunch, she may watch television, clean house, do more laundry, wash dishes, or take a nap.

AR 37.

Medications, treatments, and other methods used to alleviate symptoms are also "an important indicator of the intensity and persistence" of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.1529(c)(3); SSR 16-3p. For example, an ALJ may consider unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti*, 533 F.3d at 1039; the use of conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); and any other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(vii), 416.1529(c)(3)(vii). In this case, the ALJ contrasted Plaintiff's allegations of disabling pain and symptoms with a "very conservative course of treatment," consisting primarily of medication and medication management. AR 37. Since her surgery, Plaintiff's periodic diagnostic studies have been normal. AR 37. "[H]er diabetes is controlled with medication and her blood sugars are normal." AR 37. Similarly, her hypertension and hyperlipidemia are controlled with medication. AR 38. Even during the period flare-ups of the arthritis in her hands, Plaintiff remains able to perform tasks and does not require specialized care. AR 38. The ALJ concluded:

> Based on a review of the entire record and the hearing testimony, the undersigned concludes the claimant's subjective allegations of debilitating pain and limitation precluding all work activity are not supported by the objective evidence. Her daily activities are not consistent with one who suffers such severe limitations as to preclude all work activity. Finally, some of her alleged

14

> impairments have been responsive to treatment and do not impose a disabling degree of limitations.

AR 38.

If the ALJ's credibility finding is supported by substantial evidence in the record, courts "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. In accordance, this Court will likewise not second guess the ALJ's assessment of Plaintiff's credibility.

### IX. Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff, Gloria Ann Charles.

IT IS SO ORDERED.

Dated: **November 16, 2018**  /s/ Gary S. Austin
UNITED STATES MAGISTRATE JUDGE